# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:13-CV-00656-JHM**

**DANIKA VANDEN BOSCH and JACKLYN HOGUE,**
**Individually and As Next Friend of MARIAH RICE**         **PLAINTIFFS**

**V.**

**BAYER HEALTHCARE**
**PHARMACEUTICALS, INC.**         **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim and Motion to Strike [DN 36] of Bayer Healthcare Pharmaceuticals ("Bayer"). Fully briefed, this matter is ripe for decision. For the following reasons, the Court holds that Bayer's motion to dismiss [DN 36] is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

This action concerns Mirena®, an intrauterine contraceptive system which was designed, manufactured, tested, marketed, and distributed by Bayer. (See Am. Compl. [DN 34] ¶¶ 13-14.) Mirena® is made of flexible plastic and is inserted into a patient's uterus by a healthcare provider during an office visit. (See id. ¶ 26.) Once inserted, Mirena® releases levonorgestrel, a synthetic progestogen, directly into the uterus for birth control. While it is not known exactly how Mirena® works, it is believed that Mirena® thickens cervical mucus, thins the uterine lining, inhibits sperm movement, and reduces sperm survival to prevent pregnancy. (Id. ¶ 28.)

This action is brought by three Plaintiffs: Ms. Vanden Bosch, Ms. Hogue, and Ms. Rice.[1] In their amended complaint, Plaintiffs allege they have "sustained certain . . . health consequences

---

[1] Ms. Vanden Bosch is a Florida resident. When the initial complaint was filed, she was an Indiana resident. (Am. Compl. [DN 34] ¶ 1.) Ms. Hogue and Ms. Rice are Kentucky residents. (Id. ¶¶ 2-3.)

due to their use of MIRENA®." (Id. ¶ 21.) Plaintiff Vanden Bosch alleges that her Mirena® was inserted on April 25, 2011 in Louisville, Kentucky. (Id. ¶ 45.) "Within just a few days, [she] developed severe urinary symptoms with frequency, urgency and dysuria." (Id. ¶ 46.) In addition, she "began having to urinate every 20 to 25 minutes." (Id. ¶ 47.) Ms. Vanden Bosch had her Mirena® removed on May 6, 2011 in Louisville, Kentucky. (Id. ¶ 48.) She has since been "diagnosed with interstitial cystitis," which is a "chronic condition with symptoms including uncomfortable bladder pressure, bladder pain and pelvic pain . . . ." (Id. ¶¶ 49-50.) Ms. Vanden Bosch alleges that the "signs and symptoms of interstitial cystitis appeared almost immediately after the insertion [of her Mirena®]." (Id. ¶ 54.) Prior to her experience with Mirena®, she had "no prior history of an interstitial cystitis diagnosis or any of its symptoms." (Id. ¶ 52.)

Plaintiff Hogue alleges that her Mirena® was inserted on December 28, 2006 in Bowling Green, Kentucky. (Id. ¶ 64.) Although her Mirena® had not been removed, she became pregnant with Plaintiff Rice in October 2010. (Id. ¶¶ 65-66.) Plaintiffs allege that Ms. Rice "experienced developmental delay and underwent genetic testing that revealed an abnormal microarray result, including an Xp chromosome deletion." (Id. ¶ 68.) Plaintiffs allege that Ms. Rice's chromosome deletion was caused by Ms. Hogue's use of her Mirena®. (Id. ¶¶ 71-72.)

Plaintiffs assert myriad causes of action against Bayer, including: negligence (First Cause of Action); defective design (Second Cause of Action); manufacturing defect (Third Cause of Action); failure to warn (Fourth Cause of Action); products liability defect due to nonconformance with representations (Fifth Cause of Action); defect due to failure to adequately test (Sixth Cause of Action); breach of express warranty (Seventh Cause of Action); and breach of implied warranties (Eighth Cause of Action). (Id. ¶¶ 87-174.) Plaintiffs also allege: fraudulent misrepresentation (Ninth Cause of Action); fraudulent concealment (Tenth Cause of Action); fraud and deceit

(Eleventh Cause of Action); and violations of the Indiana and Kentucky Consumer Protection Statutes (Twelfth Cause of Action). (Id. ¶¶ 175-250.) Finally, Plaintiffs allege a cause of action for punitive damages (Thirteenth Cause of Action). (Id. ¶¶ 251-261.)

Bayer has filed a motion to dismiss Plaintiffs' Amended Complaint under Fed. R. Civ. P. 12(b)(6). Bayer also asks the Court to strike some of Plaintiffs' allegations pursuant to Fed. R. Civ. P. 12(f). (Mot. to Dismiss Pls.' Am. Compl. for Fail. to State Cl. & Mot. to Strike [DN 36].)

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), accepting all of the plaintiffs' allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiffs must provide the grounds for their entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The plaintiffs satisfy this standard only when they "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts that are merely "consistent with a defendant's liability" or if the facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678–79. Instead, the allegations must "'show[] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the plaintiffs plead claims which sound in fraud, those claims are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, the Sixth Circuit requires the allegations to contain the 'time,

place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendant[]; and the injury resulting from the fraud.'" Our Lady of Bellefonte Hosp., Inc. v. Tri–State Physicians Network, Inc., 2007 WL 2903231, at *6 (E.D. Ky. Sept. 27, 2007) (quoting Coffey v. Foamex L.P., 2 F.3d 157, 161–62 (6th Cir. 1993)). "Generalized and conclusory allegations that the Defendant['s] conduct was fraudulent do not satisfy Rule 9(b)." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001).

### III. APPLICABLE LAW

In its motion to dismiss Plaintiffs' Amended Complaint, Bayer analyzes all of Plaintiffs' claims under Kentucky law, including the claims of Plaintiff Vanden Bosch, a non-resident of Kentucky. (Def.'s Mem. of Law in Supp. of its Mot. to Dismiss Pls.' Am. Compl. ("Def.'s Mem.") [DN 36-1] 5, n.1.) In support of its decision to apply Kentucky law to Ms. Vanden Bosch's claims, Bayer highlights her allegation that she "received all of the care and treatment for [her Mirena®] in Kentucky," including that her Mirena® was both inserted and removed there. (Am. Compl. [DN 34] ¶¶ 45, 48, 239.) Bayer states that based on these allegations, Ms. Vanden Bosch's claims must be governed by Kentucky law. See, e.g., Novadx Ventures, Corp. v. Gress Eng'g, P.C., 2013 WL 794375, at *2 (E.D. Ky. Mar. 4, 2013) (holding that "Kentucky has a strong preference for selecting its law in tort actions" and if there are significant contacts with Kentucky, even if not the most significant, Kentucky law should apply); Wells Fargo Fin. Leasing, Inc. v. Griffin, -- F. Supp. 2d --, 2013 WL 4776524, at *4 (W.D. Ky. Sept. 6, 2013) (explaining that Kentucky courts "are very egocentric or protective concerning choice of law questions" and there is a "strong preference in Kentucky for applying Kentucky law"); Combs v. Int'l Ins. Co., 163 F. Supp. 2d 686, 690 (E.D. Ky. 2001) (noting that "[f]ederal courts sitting in diversity must apply the procedural law of the forum, here Kentucky, including its statutes of limitations").

In response to Bayer's motion to dismiss, Plaintiffs appear to concede that Kentucky law applies to all of their claims. While Plaintiffs do not conduct a full choice of law analysis, they discuss and apply Kentucky's borrowing statute. (See Pls.' Resp. to Def.'s Mot. to Dismiss ("Pls.' Resp.") [DN 37] 7-9.) In addition, Plaintiffs cite Kentucky law while analyzing nearly all of their causes of action. (Id. at 16 (arguing that Kentucky law recognizes a claim for failure to adequately test); 18 (arguing that Kentucky law does not require privity in tort claims when a defendant defrauds a third-party); 19 (applying Ky. Rev. Stat. § 411.300(1) to their claim for "Defect due to Nonconformance with Representations"); 20-22 (citing Kentucky law when discussing whether Plaintiff Hogue has suffered a legally cognizable injury).) While Plaintiffs make a statement in their response that "Indiana law and the Indiana Products Liability Act may apply" to their breach of warranty claims, (id. at 18), they make no effort to explain to the Court why it should apply Indiana law to a case filed in Kentucky by an individual who allegedly "received all of the care and treatment for [her Mirena®] in Kentucky," including that the device was inserted and removed there. (Am. Compl. [DN 34] ¶¶ 45, 48, 239.) Thus, the Court holds that Kentucky law applies to this case. See Wilton Corp. v. Ashland Castings Corp., 188 F.3d 670, 673 n.2 (6th Cir. 1999) (noting that there is no need to undertake a choice-of-law inquiry when the parties agree on the applicable substantive law); GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998) (holding that when parties agree that a state's substantive law applies, the court need not conduct a choice-of-law analysis *sua sponte*); Novadx Ventures, Corp., 2013 WL 794375, at *2 (noting that "Kentucky has a strong preference for selecting its law in tort actions" and if there are significant contacts with Kentucky, Kentucky law should apply).[2]

_____

[2] The Court recognizes that Plaintiff Vanden Bosch now states in her response, and in an affidavit, that the Amended Complaint "mistakenly alleges the place of the device insertion as Louisville, Kentucky"—and that to the best of her recollection, her Mirena® was actually inserted in Clarksville, Indiana. (See Pls.' Resp. [DN 37] 8; Aff. of Danika Vanden Bosch [DN 37-1] ¶ 1.) However, the Court refuses to consider these new facts, as they are outside

## IV. DISCUSSION

Bayer makes several arguments concerning the viability of Plaintiffs' claims. The Court will consider each of these arguments below, albeit in a slightly different order.

### A. PLAINTIFF VANDEN BOSCH'S PRODUCTS LIABILITY CLAIMS
### (FIRST, SECOND, THIRD, FOURTH, FIFTH, AND SIXTH CAUSES OF ACTION)

Bayer first argues that the Court must dismiss Plaintiff Vanden Bosch's products liability claims because they are time-barred. "A district court, sitting in diversity, must apply the law of the forum state in determining statute of limitations questions." Swanson v. Wilson, 423 Fed. App'x 587, 592 (6th Cir. 2011) (citation omitted). Thus, the Court must apply Kentucky law. Kentucky has a one-year statute of limitations for products liability claims. See Ky. Rev. Stat. § 413.140(1)(a); see also McGregory v. Tractel, Inc., 2007 WL 2229321, at *1 (W.D. Ky. July 31, 2007) (dismissing a plaintiff's negligence and strict liability claims under § 413.140(1)(a) since they were time-barred). The limitations period begins running "on the date the injury is inflicted even where the injury is slight initially and its full extent is not known until years later." Asher v. Unarco Material Handling, Inc., 596 F.3d 313, 321-22 (6th Cir. 2010) (applying Kentucky law). The discovery rule "is available only in cases where the fact of injury or offending instrumentality is not immediately evident or discoverable with the exercise of reasonable diligence . . . ." Fluke Corp. v. LeMaster, 306 S.W.3d 55, 60 (Ky. 2010).

In this case, as noted above, Ms. Vanden Bosch alleges that her Mirena® was inserted on April 25, 2011. (See Am. Compl. [DN 34] ¶ 45.) "Within just a few days, [she] developed severe urinary symptoms with frequency, urgency and dysuria." (Id. ¶ 46.) She also "began having to

---

of the pleadings. See Dunn v. Gordon Food Servs., Inc., 2010 WL 4180503, at *4 (W.D. Ky. Oct. 20, 2010) (noting that Fed. R. Civ. P. 12(d) "allows a court to exclude from its consideration matters outside the pleadings").

In addition, it seems to the Court that by attaching Ms. Vanden Bosch's affidavit to Plaintiffs' response, Plaintiffs have, in essence, attempted to amend their complaint without the Court's leave. This is improper. See Fed. R. Civ. P. 15(a)(2) (allowing an amendment at this juncture "only with . . . the court's leave").

urinate every 20 to 25 minutes." (Id. ¶ 47.) She had her Mirena® removed on May 6, 2011, only eleven days after it was inserted. (Id. ¶ 48.) She was then diagnosed with interstitial cystitis. (Id. ¶ 49.) Ms. Vanden Bosch alleges that the "signs and symptoms of interstitial cystitis appeared almost immediately after the insertion." (Id. ¶ 54.) Prior to her experience with Mirena®, she had "no prior history of an interstitial cystitis diagnosis or any of its symptoms." (Id. ¶ 52.)

Ms. Vanden Bosch filed this suit on April 25, 2013—almost two years after she had her Mirena® removed on May 6, 2011. (See Compl. [DN 1].) Bayer thus argues that her products liability claims are time-barred. Bayer argues that Ms. Vanden Bosch knew of her injury and the "offending instrumentality" (i.e. her Mirena®) almost immediately after the device was inserted; however, she still filed her lawsuit nearly two years later, outside the one-year limitations period. Bayer asks the Court to dismiss her products liability claims. See Fluke Corp., 306 S.W.3d at 61 (noting that the statute of limitations began running when the plaintiffs "should have reasonably suspected that the [product] was not working properly and investigated this possibility"); Adams v. 3M Co., 2013 WL 3367134, at *4-6 (E.D. Ky. July 5, 2013) (dismissing claims as time-barred when a plaintiff had sufficient facts "to put him on notice that there was a potential connection between his injuries and the respirators he wore"); Hazel v. Gen. Motors Corp., 863 F. Supp. 435, 438-39 (W.D. Ky. 1994) (holding that claims were time-barred because "the injury and the instrumentality causing the injury were obvious").

In Plaintiffs' response, Ms. Vanden Bosch does not dispute that her products liability claims are time-barred if Kentucky's one-year statute of limitations applies. Instead, she argues that the Court must apply Kentucky's borrowing statute and borrow Indiana's two-year statute of limitations. (See Pls.' Resp. [DN 37] 6-9.) "A borrowing statute is a legislative exception from the general rule that the forum always applies its statute of limitation." CMACO Auto. Sys., Inc.

v. Wanxiang Am. Corp., 589 F.3d 235, 242 (6th Cir. 2009) (citation omitted). "Although borrowing statutes vary from state to state, 'all provide that the forum state will apply the statute of limitations from the foreign jurisdiction in which the cause of action accrued." Id. Ms. Vanden Bosch argues that in this case, the Amended Complaint contains mistaken, erroneous allegations regarding where her Mirena® was inserted—and when accurate facts are considered, it is clear that the cause of action accrued in Indiana. (See Pls.' Resp. [DN 37] 8-9.) Ms. Vanden Bosch argues that Indiana's two-year statute of limitations, found in Ind. Code § 34-20-3-1(b)(1), thus applies and her products liability claims are timely. (See id.)

The Court finds that Bayer's argument is correct: Ms. Vanden Bosch's products liability claims are time-barred. Plaintiffs' argument regarding the applicability of Kentucky's borrowing statute is without merit. Kentucky's borrowing statute applies the statute of limitations of another state when a cause of action arose in that state **and** the other state has a **shorter** statute of limitations. See CMACO Auto. Sys., Inc., 589 F.3d at 242 (noting that if a cause of action "arises in a foreign jurisdiction which has a shorter statute of limitations than [the forum] for the same cause of action," a court "must 'borrow' the foreign jurisdiction's statute of limitations"); Swanson, 423 Fed. App'x at 593 (reciting the "three-step analysis" necessary to determine the applicability of Kentucky's borrowing statute: "(1) did the cause of action accrue in another state? (2) If so, is that state's statute of limitations for the particular cause of action shorter than the corresponding Kentucky statute of limitations? (3) If so, application of the accrual state is applied; if not, Kentucky's statute of limitations is applied."); Abel v. Austin, 411 S.W.3d 728, 735 (Ky. 2013) (citing and discussing Ky. Rev. Stat. § 413.320, Kentucky's borrowing statute).

In this case, as noted above, Kentucky has a one-year statute of limitations for products liability claims. By contrast, Indiana has a two-year statute of limitations. Since Indiana's statute

is longer, Kentucky's one-year statute applies. See, e.g., Stivers v. Ellington, 140 S.W.3d 599, 601 (Ky. App. 2004) (holding that the borrowing statute "mandates that the Kentucky statute of limitations applies" when Kentucky's one-year period was shorter than Colorado's two-year period). Ms. Vanden Bosch filed her lawsuit outside the one-year period. Bayer's motion is **GRANTED** as to her products liability claims. Plaintiffs' First, Second, Third, Fourth, Fifth, and Sixth Causes of Action are accordingly **DISMISSED** as to Ms. Vanden Bosch.

### B. PLAINTIFF HOGUE'S TORT CLAIMS
### (FIRST, SECOND, THIRD, FOURTH, FIFTH, SIXTH, NINTH, TENTH, AND ELEVENTH CAUSES OF ACTION)

Bayer next argues that Plaintiff Hogue has no cognizable tort cause of action for personal injury to herself. (Def.'s Mem. [DN 36-1] 14; Def.'s Reply in Supp. of its Mot. to Dismiss Pls.' Am. Compl. for Failure to State a Cl. & Mot. to Strike ("Def.'s Reply") [DN 39] 11-12.) In this respect, Bayer notes that the only allegation in the Amended Complaint that can be construed as an injury to Ms. Hogue is a pregnancy while using Mirena®. (Am. Compl. [DN 34] ¶¶ 65-66.) Bayer argues that tort claims based on such injuries are not viable under Kentucky law. Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr., P.S.C., 120 S.W.3d 682, 689 (Ky. 2003).[3] According to Bayer, the Kentucky Supreme Court has made clear that a parent has no cognizable legal injury when alleged wrongdoing results "in a genetically or congenitally impaired human life, even severally impaired . . . ." Id. at 689. "The establishment of a cause of action based on the matter of wrongful conception, wrongful life or wrongful birth is clearly within the purview of the legislature only." Schork v. Huber, 648 S.W.2d 861, 863 (Ky. 1983).

In Plaintiffs' response, Ms. Hogue argues that the facts in Grubbs are not analogous to the facts in this case. In Grubbs, the parents of a child who was born with profound and incurable

---

[3] While Plaintiffs refer to Ms. Hogue's tort claims as "wrongful life" claims, the Court notes they are more properly categorized as "wrongful birth" or "wrongful conception" claims. A "wrongful life" claim is brought by the child, not the parent. See Grubbs ex rel. Grubbs, 120 S.W.3d at 687-91 (discussing parents' "wrongful birth" claim).

birth defects alleged negligence against their treating physician for failing to correctly diagnose and/or inform them of the child's fetal medical condition in time for an abortion. 120 S.W.3d at 684. According to Ms. Hogue, her case is distinguishable, as she "does not claim that Defendant's negligence led to a lack of notice and, in turn, an opportunity to terminate the pregnancy." (Pls.' Resp. [DN 37] 21.) Instead, she claims that Bayer's negligence "led directly to the failure of the product, which, in turn, led directly to the injuries in question." Ms. Hogue states that her injuries include Ms. Rice's "profound and incurable birth defects," as well as "enduring the pregnancy itself due to the failure of the product." Ms. Hogue notes that being pregnant "is a life-altering event" that resulted in increased parental abilities (as she already had children to support), extra doctor visits, and increased responsibility and stress arising from Ms. Rice's condition. (Id.)

The Court agrees with Plaintiffs that the facts of Grubbs are distinguishable from this case. Contrary to the plaintiffs in Grubbs, Ms. Hogue does not allege that she should have been given an opportunity to terminate her pregnancy. The Court finds, however, that Grubbs' rationale still applies. At its core, Ms. Hogue's only alleged injury is that she became pregnant and had a child despite her use of Mirena®. (Am. Compl. [DN 34] ¶¶ 65-66.) The Kentucky Supreme Court has clearly held that a child's life cannot be considered a legally cognizable injury. See Grubbs, 120 S.W.3d at 690; Schork, 648 S.W.2d at 862 (holding that "parents cannot recover damages based upon the costs of raising a healthy but unexpected child from a doctor following an unsuccessful sterilization procedure"). Further, Plaintiffs have failed to cite any Kentucky cases indicating that courts should find a legal injury when a woman gets pregnant despite her use of contraception. The Court holds that Ms. Hogue has not alleged a legally cognizable injury. Further, as noted by Bayer, she has cited no cases supporting her theory that she has an action separate and independent from any action Ms. Rice may have for the alleged birth defects. (See Def.'s Reply [DN 39] 11.)

The Court's holding that Ms. Hogue does not allege a legally cognizable injury does not end the inquiry, however. The Court must still decide how this holding impacts the case. Plaintiffs argue that Bayer's argument concerning Ms. Hogue's legal injury relates only to her negligence claim—and if Ms. Hogue's negligence claim fails, that does not affect her other claims for strict products liability. (Pls.' Resp. [DN 37] 22.) According to Ms. Hogue, her strict liability claims differ from her negligence claim because they "do not require proof of negligence" and the "only question is whether Defendant's product was unreasonably dangerous." (Id.) Bayer, by contrast, argues that Grubbs' holding is not limited to negligence claims, as it applies to all tort claims that require a showing of injury. (See Def.'s Reply [DN 39] 11-12.)

The Court agrees with Bayer. As discussed above, in Grubbs, the Court held that a child's life cannot be considered a legally cognizable injury. 120 S.W.3d at 690. It did so in the context of a negligence claim. This does not mean, however, that its holding only applies to negligence claims. It seems to the Court that if a child's life is not a legally cognizable injury for a negligence claim, it also cannot be a legally cognizable injury for other tort claims that require a showing of injury. Here, all of Ms. Hogue's tort-related causes of action, including her strict products liability claims and fraud claims, require a showing of injury. See Radcliff Homes, Inc. v. Jackson, 766 S.W.2d 63, 68 (Ky. App. 1989) (noting that under Kentucky law, to prevail in a strict products liability action, a plaintiff must show: "(1) that there is a 'product,' which is (2) in a defective condition unreasonably dangerous to the user or consumer or his property, and (3) which reaches the user or consumer without substantial change in the condition in which it is sold; (4) that the product is sold by one who is engaged in the business of selling such a product which (5) **results in physical harm to the ultimate user or consumer or his property**") (emphasis added); United Parcel Serv. Co. v. Rickert, 996 S.W.2d 464, 468 (Ky. 1999) (noting that to prevail in a fraud

action in Kentucky, the plaintiff must establish: "a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) **causing injury**") (emphasis added). Thus, the Court holds that Bayer's motion is **GRANTED** as to Plaintiff Hogue's tort-related claims. Plaintiffs' First, Second, Third, Fourth, Fifth, Sixth, Ninth, Tenth, and Eleventh Causes of Action are **DISMISSED** as to her.

### C. PLAINTIFFS' NEGLIGENT DESIGN AND MANUFACTURE CLAIM (FIRST CAUSE OF ACTION), DESIGN DEFECT CLAIM (SECOND CAUSE OF ACTION), MANUFACTURING DEFECT CLAIM (THIRD CAUSE OF ACTION), FRAUD-BASED CLAIMS (NINTH, TENTH, AND ELEVENTH CAUSES OF ACTION), AND FAILURE TO ADEQUATELY TEST CLAIM (SIXTH CAUSE OF ACTION)

Bayer next argues that Plaintiffs' negligent design and manufacture claim (First Cause of Action), defective design claim (Second Cause of Action), manufacturing defect claim (Third Cause of Action), and fraud claims (Ninth, Tenth, and Eleventh Causes of Action) are "nothing but formulaic recitations of claim elements without factual enhancement." (Def.'s Mem. [DN 36-1] 7.) Bayer also argues that Plaintiffs' failure to adequately test claim (Sixth Cause of Action) must be dismissed. (Id. at 11-12.) The Court considers each of these claims below. Because the Court has dismissed the First, Second, Third, and Sixth Causes of Action as to Ms. Vanden Bosch and Ms. Hogue, its discussion of these claims pertains only to Ms. Rice. Because the Court has dismissed the Ninth, Tenth, and Eleventh Causes of Action as to Ms. Hogue, its discussion of these claims pertains only to Ms. Vanden Bosch and Ms. Rice.

**Negligent Design and Manufacture Claim (First Cause of Action).** Under Kentucky law, to succeed on a negligence claim, Plaintiffs must establish that: (1) Bayer owed a duty of care to Plaintiffs; (2) Bayer breached its duty; and (3) the breach proximately caused Plaintiffs' damages. Mullins v. Commw. Life Ins. Co., 839 S.W.2d 245, 247 (Ky. 1992). Bayer argues that while Plaintiffs reference negligent design and manufacture in their Amended Complaint, (Am.

Compl. [DN 34] ¶ 90 (alleging that Bayer negligently designed and manufactured Mirena® "in a manner which was dangerous to its users")), they do not "allege facts supporting those allegations, and instead rel[y] on bare allegations and legal conclusions." (Def.'s Mem. [DN 36-1] 8.) More specifically, Bayer argues that Plaintiffs fail to allege how Bayer breached its duties with respect to either the design or manufacture of Mirena®—and also fail to allege how any breaches caused their injuries. Bayer argues that the Court must dismiss Plaintiffs' negligent design and manufacture claim. See Espinosa v. Louisville Metro. Gov't, 2011 WL 2295055, at *1 (E.D. Ky. June 10, 2011) (dismissing a negligence claim when the complaint contained "no factual assertions, only several legal conclusions," as "legal conclusions are not entitled to the presumption of truth").

Plaintiffs counter that they have alleged sufficient factual content to support their negligent design and manufacture claim. Plaintiffs highlight Paragraph 89, where they allege that Bayer failed to exercise ordinary care in designing and manufacturing Mirena® because it "knew or should have known that using MIRENA® created a high risk of unreasonable, dangerous side effects . . . ." (Am. Compl. [DN 34] ¶ 89.) According to Plaintiffs, they "go on in paragraphs 90-93 to identify specifically in detail *how* the Defendant failed to exercise ordinary care." (Pls.' Resp. [DN 37] 9.) Plaintiffs also note that the Amended Complaint "contains multiple, specific and detailed allegations of violations of federal statutes and regulations." (Id.) Plaintiffs contend that Ms. Rice's specific, documented birth defect injuries are the "specific plausible outcomes of negligent design and manufacturing of the product." (Id. at 10.)

After thoroughly reviewing the allegations in the Amended Complaint, the Court finds that Plaintiffs have failed to plead sufficient factual content to support their negligent design and manufacture claim. In Paragraph 90, Plaintiffs allege that Bayer was negligent in "designing MIRENA® in a manner which was dangerous to its users." (Am. Compl. [DN 34] ¶ 90(k).) In

addition, Plaintiffs allege that Bayer was negligent in "manufacturing MIRENA® in a manner which was dangerous to its users." (Id. ¶ 90(l).) Further, in Paragraph 93, Plaintiffs allege that Bayer "[f]ailed to use due care in designing and manufacturing MIRENA® so as to avoid the aforementioned risks to individuals when MIRENA® was used for contraceptive purposes." (Id. ¶ 93(a).) However, Plaintiffs do not assert any facts to support these allegations. Plaintiffs do not allege *how* the Mirena® is defectively designed, nor do they allege *how* their specific Mirena® devices were defective due to manufacturing. It is not enough for Plaintiffs to simply rely on their basic injury allegations and argue that the product was somehow defective because it was "dangerous." Bayer's motion to dismiss is **GRANTED** as to Ms. Rice's negligent design and manufacture claim. Her First Cause of Action is **DISMISSED** to this extent.

The Court notes, however, that Bayer does not challenge Plaintiffs' First Cause of Action to the extent they allege negligence in researching, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control and/or distribution of Mirena®. (Pls.' Resp. [DN 37] 6.) Bayer only challenges the First Cause of Action to the extent Plaintiffs assert a negligent design and manufacture claim. Therefore, the Court holds that Ms. Rice's negligence claim still remains in this action—to the extent it is based on researching, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control and/or distribution of Mirena®.

**Strict Liability Design Defect Claim (Second Cause of Action).** Bayer next argues that Plaintiffs' design defect claim is insufficiently pleaded since Plaintiffs fail, among other things, to identify what specific design aspects of Mirena® were allegedly defective. (See Def.'s Mem. [DN 36-1] 8.) Under Kentucky law, to prevail in a strict products liability action, a plaintiff must show: "(1) that there is a product,' which is (2) in a defective condition unreasonably dangerous to the user or consumer or his property, and (3) which reaches the user or consumer without

substantial change in the condition in which it is sold; (4) that the product is sold by one who is engaged in the business of selling such a product which (5) results in physical harm to the ultimate user or consumer or his property." Radcliff Homes, Inc., 766 S.W.2d at 68. A plaintiff must also offer proof of an alternative, safer design that is practicable under the circumstances. See McCoy v. Gen. Motors Corp., 47 F. Supp. 2d 838, 840 (E.D. Ky. 1998). Here, Bayer argues that Plaintiffs' allegations do not meet this burden. According to Bayer, Plaintiffs have not identified what aspect of the Mirena® design is allegedly defective, instead simply parroting the elements of a defective design claim by utilizing words such as "unsafe, defective, and inherently dangerous," "not reasonably fit, suitable, or safe for its intended purpose," and "unreasonably dangerous for its normal, intended use." (Am. Compl. [DN 34] ¶¶ 102-03, 107.) Bayer also argues that Plaintiffs fail to identify a specific feasible design alternative, instead making bare, conclusory allegations that such an alternative exists. (Id. 110.) Bayer urges the Court to dismiss Plaintiffs' Second Cause of Action. Pruitt v. Genie Indus., Inc., 2013 WL 139701, at *4 (E.D. Ky. Jan. 10, 2013) (dismissing a strict liability claim when there were no factual allegations to support it); Moore v. Mylan Inc., 840 F. Supp. 2d 1337, 1344-45 (N.D. Ga. 2012) (dismissing a defective design claim when the plaintiffs failed to allege a specific design defect).

Plaintiffs respond that they have sufficiently pleaded a strict liability design defect claim. They highlight their allegation that "Mirena® is defective in design or formulation in that it is not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation." (Am. Compl. [DN 34] ¶ 103.) They also highlight their allegation that Bayer defectively designed Mirena® because the listed harmful side effects outweighed the product's potential utility, the product was more dangerous than an ordinary consumer would expect, and the product was more dangerous than risks associated with

other forms of birth control. (Id. ¶ 105.) Finally, Plaintiffs highlight their allegation that "there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Plaintiffs' injuries without impairing the reasonably anticipated or intended function of the product." (Id. ¶ 110.) Plaintiffs contend that these allegations are sufficient.

In support of their argument, Plaintiffs cite Miller v. ALZA Corp., 759 F. Supp. 2d 929 (S.D. Ohio 2010), and Foust v. Stryker Corp., 2010 WL 2572179 (S.D. Ohio June 22, 2010). In Miller, the court denied a motion to dismiss a design defect claim, holding that the plaintiff's allegation "that the risks of the reservoir design outweighed its benefits, especially considering the availability of alternative safer designs," sufficiently stated a defective design claim. 759 F. Supp. 2d at 939. In Foust, the court held that the plaintiff's "assertions that Defendant designed and manufactured hip replacement parts, that Plaintiff had Defendant's hip replacement parts surgically implanted, that the hip replacement parts broke while implanted and that Defendant's products can be identified in two parts by specific part numbers are sufficient to support a plausible inference that Defendant designed and/or manufactured a defective product." 2010 WL 2572179, at *5. Plaintiffs assert that the Court should make a similar ruling here.

The Court finds that Miller and Foust do not support Plaintiffs' position. In Miller, the decedent used a transdermal prescription pain patch that was designed to release certain dosages of a narcotic drug through his skin and into his bloodstream. The patch contained the drug in a reservoir between a layer of impermeable polyester backing and a semi-permeable layer of ethyl-acetate vinyl film. The decedent's estate alleged that the reservoir on the patch the decedent wore at the time of his death leaked as a result of seal integrity defects. 759 F. Supp. 2d at 931. Thus, the complaint alleged how the product was defective—namely, there were seal integrity defects due to a defective reservoir design. See id. at 939. Likewise, in Foust, the plaintiff alleged how the

product was defective, as she alleged that her hip replacement parts broke while implanted, causing the replacement to fail. 2010 WL 2572179, at *5. In this case, however, Plaintiffs do not offer this factual detail. Plaintiffs only assert that their Mirena® products were in an "unsafe, defective, and inherently dangerous condition," (Am. Compl. [DN 34] ¶ 102), and that Mirena® was defectively designed because it was "not reasonably fit, suitable, or safe for its intended purpose." (Id. ¶ 103.) They do not allege what part of their Mirena® devices failed—or that their devices broke or malfunctioned once inserted. Plaintiffs simply do not allege how their Mirena® products were defective. Bayer's motion to dismiss Plaintiffs' strict liability design defect claim is **GRANTED**. Therefore, Ms. Rice's Second Cause of Action is **DISMISSED**.

**Strict Liability Manufacturing Defect Claim (Third Cause of Action).** Bayer argues that Plaintiffs' strict liability manufacturing defect claim is insufficiently pleaded. (Def.'s Mem. [DN 36-1] 9-10.) Under Kentucky law, a plaintiff alleging a manufacturing defect must show that the product was "in a defective condition because it was not manufactured or assembled in accordance with its specifications" and that the condition caused the alleged injuries. See Greene v. B.F. Goodrich Avionics Sys., 409 F.3d 784, 788 (6th Cir. 2005) (applying Kentucky law). In this case, Bayer argues that Plaintiffs have failed to allege facts to support such a claim, instead offering only a formulaic recitation of the claim's elements.

According to Bayer, although Plaintiffs allege that Mirena® "contained manufacturing defects which rendered the product unreasonably dangerous" and that the subject products were "not made in accordance with the Defendant's specifications or performance standards," (Am. Compl. [DN 34] ¶¶ 122(a), 122(c)), they provide no information about the alleged defects—or how their specific Mirena® devices deviated from Bayer's intended design. In addition, Bayer argues that Plaintiffs fail to explain how the alleged manufacturing defects caused their injuries.

Bayer urges the Court to dismiss Plaintiffs' Third Cause of Action. See Moore, 840 F. Supp. 2d at 1344-45 (dismissing the plaintiff's manufacturing defect claim after noting that the plaintiff had failed to allege any specific manufacturing defect in the subject product—and holding that the court could not "draw the reasonable inference that a . . . manufacturing defect caused the decedent's injuries" because the plaintiff had "not provided a specific list of injuries suffered by the decedent as a result of a specific . . . manufacturing defect . . . .")

Plaintiffs counter that they have sufficiently alleged a strict liability manufacturing defect claim. Plaintiffs allege in their Amended Complaint that when placed in the stream of commerce, their "MIRENA® contained manufacturing defects which rendered the product unreasonably dangerous," (Am. Compl. [DN 34] ¶ 34(a)), that the manufacturing defects "occurred while the product was in the possession and control of the Defendant", (id. ¶ 34(b)), that the product was "not made in accordance with the Defendant's specifications or performance standards," (id. ¶ 34(c)), and that the product's manufacturing defects "existed before it left the control of the Defendant." (Id. ¶ 34(d).) Plaintiffs argue that these allegations are sufficient.

Again, however, the Court disagrees. In this case, Plaintiffs fail to allege specific facts to support their manufacturing defect claim. They do not allege any specific manufacturing defect that occurred with their Mirena® products. They similarly do not allege how Plaintiffs' specific Mirena® products differed from Bayer's specifications. Due to the lack of factual allegations, the Court holds that Plaintiffs have failed to properly state a manufacturing defect claim. Bayer's motion to dismiss is **GRANTED** on this issue. Ms. Rice's Third Cause of Action is **DISMISSED**.

**Fraud-Based Claims (Ninth, Tenth, and Eleventh Causes of Action).** Bayer also argues that Plaintiffs have insufficiently pleaded their fraud-based claims: fraudulent misrepresentation (Ninth Cause of Action), fraudulent concealment (Tenth Cause of Action), and fraud and deceit

(Eleventh Cause of Action). The Sixth Circuit interprets Fed. R. Civ. P. 9(b) to require plaintiffs to show: (1) the time, place, and content of any allegedly false representations; (2) the fraudulent scheme; (3) the defendant's fraudulent intent; and (4) the resulting injury. <u>Chesbrough v. VPA, P.C.</u>, 655 F.3d 461, 467 (6th Cir. 2011) (applying Kentucky law); <u>Sanderson v. HCA-The Healthcare Co.</u>, 447 F.3d 873, 877 (6th Cir. 2006) (stating that the heightened pleading standard requires plaintiffs to allege the "who, what, when, where, and how" of the alleged fraud).

In this case, Plaintiffs allege that Bayer falsely represented that Mirena® "had been tested and was found to be safe and/or effective for contraceptive purposes," when Mirena® is actually "inherently dangerous." (Am. Compl. [DN 34] ¶¶ 176, 185, 190, 205, 213.) Plaintiffs also allege that Bayer concealed information that Mirena® "was defective, and that it caused dangerous side effects." (<u>Id.</u> ¶¶ 193, 215.) Bayer argues that these allegations are insufficient to support Plaintiffs' fraud-based claims. According to Bayer, Plaintiffs have failed to specify the time, content, and place of any alleged misrepresentations or concealments. In addition, Bayer argues that Plaintiffs have failed to identify who made the misrepresentations—and how any such misrepresentations are causally related to their alleged injuries. (<u>See</u> Def.'s Mem. [DN 36-1] 11.) Bayer argues that under Fed. R. Civ. P. 9(b), more is required. <u>See</u> <u>Clark v. Danek Med., Inc.</u>, 64 F. Supp. 2d 652, 656 (W.D. Ky. 1999) (dismissing a fraudulent concealment claim when the manufacturer's alleged misrepresentations to the FDA were too "tangential" to form the basis of liability). Bayer asks the Court to dismiss Plaintiffs' Ninth, Tenth, and Eleventh Causes of Action.

Plaintiffs counter that they have adequately pleaded their fraud-based claims. Plaintiffs begin by discussing their fraudulent concealment claim (Tenth Cause of Action). Plaintiffs argue that "[f]raud by omission is not the same, at law, as fraud by misrepresentation, and has substantially different elements." <u>Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.</u>, 113 S.W.3d

636, 641 (Ky. App. 2003). To prevail on a claim of fraud by omission, a plaintiff must prove: "a) that the defendants had a duty to disclose that fact; b) that defendants failed to disclose that fact; c) that the defendants' failure to disclose the material fact induced the plaintiff to act; and (d) that the plaintiff suffered actual damages." Id. According to Plaintiffs, much of the fraud perpetrated on them and on their physicians occurred by omissions, not affirmative misrepresentations. (Pls.' Resp. [DN 37] 14-15.) Plaintiffs thus argue that their allegations are as specific as can reasonably be expected. See Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) ("Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim."); Flynn v. Everything Yogurt, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993) (noting that "the particularity requirements of Rule 9(b) do not apply to omissions" because as a practical matter, "omissions cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation").

Regarding their fraudulent misrepresentation claim (Ninth Cause of Action) and fraud and deceit claim (Eleventh Cause of Action), Plaintiffs argue that their allegations identify the type of communication, the source, when and where the communications occurred, the content of the communications, and their reliance on them. Plaintiffs highlight "Paragraphs 55-63 and 74-82" of their Amended Complaint in support of their position. (See Pls.' Resp. [DN 37] 15.)

The Court first finds that Plaintiffs are incorrect when they argue that their Tenth Cause of Action for fraudulent concealment "has a less stringent pleading standard." (See Pls.' Resp. [DN 37] 16.) As Bayer notes in their reply, Plaintiffs' argument regarding such a standard is not based on Kentucky or Sixth Circuit law. The Sixth Circuit has analyzed Kentucky fraud-by-omission claims under Fed. R. Civ. P. 9(b). See Republic Bank & Trust Co. v. Bear Stearns &

<u>Co., Inc.</u>, 683 F.3d 239, 255-56 (6th Cir. 2012) (noting that a plaintiff asserting a fraud-by-omission claim must specify the who, what, when, where, and how of the alleged omission).

With that said, however, the Court also finds that Plaintiffs have pleaded sufficient facts under Fed. R. Civ. P. 9(b) for their Ninth, Tenth, and Eleventh Causes of Action. In Paragraphs 55-63 and 74-82, Plaintiffs allege that Ms. Vanden Bosch received certain communications from Bayer "on or around the time of insertion, including television commercials and a pamphlet or brochure." (Am. Compl. [DN 34] ¶ 55.) Ms. Vanden Bosch saw the commercials "within a few months of the date of insertion" and received the brochure "within a few days or weeks of the date of the insertion." (<u>Id.</u> ¶ 56.) Similarly, Plaintiffs allege that Ms. Hogue's physician gave her a "pamphlet or brochure at the same time of the insertion and Ms. Hogue reviewed it on or about the same date." (<u>Id.</u> ¶ 74.) According to Plaintiffs, these communications "stated or implied, *inter alia*, that MIRENA® had been tested and was found to be safe and/or effective for contraceptive purposes." (<u>Id.</u> ¶¶ 57, 75.) The communications did not warn Plaintiffs of interstitial cystitis or birth defects. Neither Ms. Vanden Bosch nor Ms. Hogue would have had the devices inserted had the communications mentioned interstitial cystitis and birth defects. (<u>Id.</u> ¶¶ 60-61, 78-79.)

With these allegations, Plaintiffs have identified the type and source of communications—i.e. pamphlets, brochures, and commercials from or by Bayer. They have also identified when they received such communications—i.e. "on or around" the time of their Mirena® insertions. Further, by alleging that the communications represented that Mirena® had been tested and was found to be safe, despite the fact that it produced dangerous side effects, including interstitial cystitis and birth defects, Plaintiffs have alleged the content of the communications. Finally, Plaintiffs have alleged that the communications "omitted, concealed, downplayed, underreported, and underestimated the dangers of MIRENA®"—and that they, and their physicians, relied on

the communications (Id. ¶¶ 61, 69, 81, 82.) The Court finds that these allegations are sufficient. The allegations place Bayer on notice of the alleged fraud such that Bayer can address Plaintiffs' fraud claims in a meaningful way. As to Ms. Vanden Bosch and Ms. Rice's Ninth, Tenth, and Eleventh Causes of Action, Bayer's motion to dismiss is **DENIED**.

**Strict Liability due to Failure to Adequately Test (Sixth Cause of Action).** Bayer also argues that Plaintiffs' Sixth Cause of Action, their failure to adequately test claim, fails because Kentucky does not recognize an independent duty to test pharmaceutical products. (Def.'s Mem. [DN 36-1] 11-12.) In support, Bayer cites Clark v. Danek Med., Inc., in which the court analyzed the plaintiffs' claim that the defendant inadequately tested the device. 1999 WL 613316, at *3 n.4. The court held that to the extent the plaintiffs argued that the defendant "failed to discover and warn of risks associated with the implant," it would "treat the claim as subsumed by the failure to warn argument." Id. In addition, Bayer cites Baird v. Bayer Healthcare Pharms., Inc., in which the court held that it would "not read into Kentucky products liability law a failure-to-test claim," as Kentucky courts had not spoken on the issue. 2013 WL 5890253, at *2 (E.D. Ky. Oct. 31, 2013). The court held that the plaintiff's failure to adequately test claim was "subsumed under her failure to warn claim." Id.

Plaintiffs counter that Kentucky law recognizes a claim for failure to adequately test, as Kentucky's Products Liability Act states that a product liability action "shall include **any action** . . . **caused by or resulting from** the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, **testing**, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of any product." Ky. Rev. Stat. Ann. § 411.300(1) (emphasis added). According to Plaintiffs, this statute indicates that under Kentucky law, failure to adequately test claims are viable. (Pls.' Resp. [DN 37] 16-17.) Plaintiffs attempt to distinguish

<u>Clark</u> on the ground that it did not consider Ky. Rev. Stat. § 411.300(1), which specifically lists the word "testing." Plaintiffs also argue that in <u>Clark</u>, the plaintiffs appear to have raised their failure to adequately test claim in their response, causing the court to simply consider the claim subsumed by other claims the plaintiffs did plead. (<u>See</u> <u>id.</u>) In addition, Plaintiffs argue that the <u>Baird</u> holding is inapplicable to this case, as the court did not hold that a claim for failure to test should always be dismissed. Plaintiffs note that in <u>Baird</u>, the plaintiff did not file a response and the court did not have the benefit of a counter-argument. (<u>Id.</u>)

The Court finds Bayer's argument more persuasive. As other district courts have noted, it is "unclear whether Kentucky law recognizes an independent duty to test. No Kentucky cases explicitly impose such a duty, but a careful reading of [Kentucky's Product Liability Act] suggests testing may be indicative of whether the manufacturer satisfied its more general duty to exercise reasonable care." <u>Prather v. Abbott Labs.</u>, 960 F. Supp. 2d 700, 713 (W.D. Ky. 2013). Because Kentucky courts have not spoken on the issue, the Court will follow the decision in <u>Baird</u> and refuse to read into Kentucky products liability law an independent failure to test claim. Plaintiffs' failure to test claim will be treated as subsumed under their failure to warn claim (Fourth Cause of Action). Therefore, Bayer's motion to dismiss is **GRANTED** as to this issue. Ms. Rice's Sixth Cause of Action is **DISMISSED**.

### D. PLAINTIFFS' BREACH OF WARRANTY CLAIMS (COUNTS VII, VIII)

Bayer next argues that Plaintiffs' breach of warranty causes of action fail as a matter of law because privity of contract is an "essential element" of such claims. <u>See</u> <u>Pruitt</u>, 2013 WL 139701, at *3 (dismissing a breach of warranty claim for lack of privity); <u>Bland v. Abbot Labs., Inc.</u>, 2012 WL 524473, at *1 n.1 (W.D. Ky. Feb. 16, 2012) (same); <u>Childress v. Interstate Battery Sys. of Am., Inc.</u>, 2010 WL 600023, at *5 (W.D. Ky. Feb. 18, 2010) (same). As a rule,

privity of contract does not extend beyond the buyer-seller setting. See Munn v. Pfizer Hosp. Prods. Grp., Inc., 750 F. Supp. 244, 248 (W.D. Ky. 1990); Love v. Danek Med., Inc., 1998 WL 1048241, at *2 n.1 (W.D. Ky. Nov. 25, 1998) (noting that a patient could not assert a breach of warranty cause of action against a bone screw manufacturer since there was no privity between the two parties). Bayer argues that here, Plaintiffs' warranty claims lack any factual assertions regarding their purchases of their Mirena® devices from Bayer. (Def.'s Mem. [DN 36-1] 12-13.) To the contrary, Plaintiffs allege that their Mirena® devices were "inserted by a healthcare provider during an office visit." (Am. Compl. [DN 34] ¶ 26.) Bayer thus urges the Court to dismiss Plaintiffs' breach of warranty claims.

Plaintiffs make two arguments in response. First, Plaintiffs argue that until discovery can take place, "it is unknown precisely with whom any of the Plaintiffs have privity, including the Defendant." (Pls.' Resp. [DN 37] 19.) The Court finds, however, that this argument is without merit. In this case, discovery is not needed to determine whether Plaintiffs are in privity with Bayer. Plaintiffs' own allegations show that Bayer did not sell the individual Mirena® devices to Ms. Vanden Bosch or Ms. Hogue. Instead, Plaintiffs allege that their doctors prescribed and inserted the Mirena® devices. (See Am. Compl. [DN 34] ¶¶ 26, 45, 64.) Plaintiffs and Bayer are not, and cannot be, in a buyer-seller relationship. Plaintiffs are not in privity with Bayer.

Second, Plaintiffs argue that Bayer's alleged fraud erases the privity requirement. They cite Highland Motor Transfer Co. v. Heyburn Bldg. Co., 35 S.W.2d 521 (Ky. 1931), in support of their position. In that case, the court held that the "right to recover for deceit should not be restricted to the immediate parties making the contract. If a third party is injured by the deceit, he should be allowed to recover against the one who made possible the damages to him by practicing the deceit in the first place." Id. at 523-24. According to Plaintiffs, they must only show that their

injuries have a direct relationship to the alleged fraud. See Snyder v. Rhinehart, 118 S.W.2d 543, 547 (Ky. 1938) (noting that "[b]efore a party can be defrauded the perpetrator of the fraud must make false statements or representations which the other party believes and acts upon"). Here, Plaintiffs argue they have made this requisite showing, as they have alleged that their injuries are directly traceable to Bayer's misrepresentations regarding the Mirena® products.

The Court, however, finds that the cases cited by Plaintiffs are not binding in the instant matter. The cases do not stand for the proposition that plaintiffs can maintain breach of warranty actions when there is no privity simply because there are allegations of fraud. As Bayer notes, it has cited recent, on-point cases which discuss the privity requirement in the context of warranty claims. The Court refuses to overlook these cases. Nevertheless, the Court must take a closer look at Plaintiffs' breach of warranty claims.

**Breach of Express Warranty (Seventh Cause of Action).** In Naiser v. Unilever U.S., Inc., this Court discussed the privity requirement in the context of a breach of express warranty action. -- F. Supp. 2d --, 2013 WL 5460870, at *8-10 (W.D. Ky. Sept. 30, 2013). The Court began by noting the general rule that Kentucky law "requires a plaintiff to be in privity of contract with a defendant to maintain a breach of warranty claim." Id. at *8 (citing Waterfill v. Nat'l Molding Corp., 215 Fed. App'x 402, 405 (6th Cir. 2007) (recognizing that under Kentucky law, "claims for breach of express or implied warranties may proceed only where there is privity between the parties")). The Court went on to consider whether a manufacturer could nonetheless create privity in favor of an ultimate consumer who was the intended beneficiary of the manufacturer's express warranties. Id. Ultimately, the Court relied on Levin v. Trex Co., Inc., 2012 WL 7832713 (W.D. Ky. Mar. 5, 2012), to hold that "an express warranty action can be maintained . . . where . . . express warranties were clearly intended for the product's consumers." Id. at *10.

In their Seventh Cause of Action, Plaintiffs allege that Bayer "expressly warranted that MIRENA® was safe and well accepted by users." (Am. Compl. [DN 34] ¶ 154.) They also allege that Bayer "expressly represented to Plaintiffs, their physicians, healthcare providers, and/or the FDA that MIRENA® was safe and fit for use for the purposes intended . . . ." (Id. ¶ 159.) In Paragraphs 55 through 63 and 74 through 82, Plaintiffs appear to outline specific facts about the warranties. Plaintiffs allege that certain television commercials, pamphlets, or brochures "stated or implied, *inter alia*, that MIRENA® had been tested and was found to be safe and/or effective for contraceptive purposes." (Id. ¶¶ 57, 75.) According to Plaintiffs, the communications "expressly warranted that MIRENA® was safe and fit for use for the purposes intended (birth control), that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other forms of hormonal contraceptives, intrauterine devices and other forms of birth control therapy, that the side effects it did produce were accurately reflected in the warnings and that it was adequately tested and fit for its intended use." (Id. ¶¶ 58, 76.)

The Court finds that with these allegations, Plaintiffs have sufficiently pleaded that Bayer made express warranties which, under <u>Naiser</u>, may support a viable express warranty action. Whether or not these alleged warranties are of the actionable kind will be better fleshed out at the summary judgment stage. Bayer's motion to dismiss Plaintiffs' Seventh Cause of Action is **DENIED**.[4]

**Breach of Implied Warranty (Eighth Cause of Action).** The Court's ruling in <u>Naiser</u> had no impact on the privity of contract requirement with respect to implied warranty causes of action. Thus, the rule that implied warranty claims require privity applies. Because the Amended

---

[4] The Court notes that it specifically makes no ruling as to whether Ms. Hogue has sufficiently alleged a legally cognizable injury with respect to this claim, and other non-tort-related causes of action. The parties focused their arguments concerning Ms. Hogue's injuries on whether <u>Grubbs</u>' holding was limited to negligence claims or applicable to all tort claims that require a showing of injury. The parties did not argue whether Ms. Hogue alleged a legally cognizable injury to support her contract-based claims and her consumer protection-based claims.

Complaint shows that Plaintiffs and Bayer are not, and cannot be, in a buyer-seller relationship, the Court holds that Plaintiffs are not in privity with Bayer. Bayer's motion is **GRANTED** as to Plaintiffs' breach of implied warranty claim. Plaintiffs' Eighth Cause of Action is **DISMISSED**.

### E. PLAINTIFFS' DEFECT DUE TO NONCONFORMANCE WITH REPRESENTATION CLAIM (FIFTH CAUSE OF ACTION)

Bayer next argues that Plaintiffs' strict liability claim for "defect due to non-conformance with representations" must be dismissed, as the cause of action is not recognized under Kentucky law—and does not differ from a breach of warranty cause of action. (See Def.'s Mem. [DN 36-1] 13.) In response, Plaintiffs turn to Kentucky's Product Liability Act, which states that a "product liability action" shall include "**any action . . . caused by or resulting from the** manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, **warning, instructing, marketing, advertising,** packaging, or **labeling** of any product." Ky. Rev. Stat. § 411.300(1) (emphasis added). Plaintiffs argue that warning, instructing, marketing, advertising, and labeling are "all forms of representations" and because Plaintiffs allege that Bayer's product did not conform to its representations about the safety of Mirena®, Plaintiffs have properly pleaded a products liability claim. (Pls.' Resp. [DN 37] 19-20.)

The Court finds Bayer's argument more persuasive. In this case, Plaintiffs characterize their Fifth Cause of Action as a strict products liability claim for "defect due to nonconformance with representations." However, Plaintiffs fail to cite any case law suggesting that such a claim is an independent cause of action under Kentucky law. A close review of Plaintiffs' Fifth Cause of Action reveals that Plaintiffs essentially duplicate their breach of express warranty claim. They allege that Bayer made certain representations (i.e. warranties) and that Bayer's product did not conform to those representations (i.e. the warranties were breached). Thus, the Court will treat Plaintiffs' Fifth Cause of Action for "defect due to nonconformance with representations" as

subsumed by their Seventh and Eighth Causes of Action for breach of warranty. Bayer's motion to dismiss is **GRANTED** on this issue. Plaintiffs' Fifth Cause of Action is **DISMISSED**.

### F. PLAINTIFFS' CONSUMER PROTECTION CLAIM (TWELFTH CAUSE OF ACTION)

Bayer next argues that under Kentucky law, Plaintiffs' consumer protection claim fails, as Plaintiffs are not in privity of contract with Bayer. See Tallon v. Lloyd & McDaniel, 497 F. Supp. 2d 847, 854-55 (W.D. Ky. 2007) (noting that the Kentucky Consumer Protection Act only applies to an action by a purchaser against the immediate seller); Espinosa, 2011 WL 2295055, at *2 (dismissing a plaintiff's consumer protection claim for lack of privity). Plaintiffs respond with one sentence, noting that Paragraph 242 of their Amended Complaint alleges that they "are in the required privity with Defendant." (Am. Compl. [DN 34] ¶ 242.) The Court finds, however, that this allegation in Paragraph 242 contradicts the factual allegations in the Amended Complaint. Plaintiffs have alleged that their Mirena® devices were inserted by healthcare providers during office visits. (See id. ¶¶ 26, 45, 64). They have not alleged facts indicating that they purchased the Mirena® devices from Bayer. Therefore, Plaintiffs' legal conclusion regarding privity is not entitled to a presumption of truth, see Espinosa, 2011 WL 2295055, at *1; Iqbal, 556 U.S. at 681, and the Court holds that Plaintiffs are not in a direct buyer-seller relationship with Bayer. Notably, however, the Court finds that this fact does not warrant dismissal of Plaintiffs' claim.

To maintain a private action under Kentucky's Consumer Protection Act, a plaintiff must generally be in privity of contract with the defendant. Naiser, 2013 WL 5460870, at *13 (citing Ky. Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc., 24 F. Supp. 2d 755, 772-73 (W.D. Ky. 1998) (noting that the KCPA "requires that privity of contract exist between the parties . . .")). The statute typically cited for the KCPA's privity requirement states:

> *Action for recovery of money or property; when action may be brought*—(1) Any person who purchases or leases goods or services primarily for personal, family or

household purposes and thereby suffers any ascertainable loss of money or property . . . may bring an action . . . in the Circuit Court in which the seller or lessor resides . . . .

K.R.S. § 367.220(1). Kentucky courts have held that this language "plainly contemplates an action by a purchaser against his immediate seller." Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc., 836 S.W.2d 907, 909 (Ky. App. 1992). As noted in Naiser, however, there is an exception to the privity requirement when express representations are alleged.

In Naiser, the Court analyzed this exception, relying on the Kentucky Court of Appeals' decision in Skilcraft Sheetmetal, Inc. 2013 WL 5460870, at *13-14. As explained by Naiser:

> In that case, Kentucky's Court of Appeals analyzed whether K.R.S. § 367.220 allows an action by a person who has not purchased or leased goods from the person he claims to have violated the KCPA. The Court held that a subsequent purchaser could not "maintain an action against a seller with whom he did not deal **or who made no warranty for the benefit of the subsequent purchaser**." The Court went on to explain that while privity is generally required to assert a cause of action under the KCPA, it found certain situations "distinguishable . . . such as that presented in Ford Motor Co. v. Mayes, Ky. App., 575 S.W.2d 480 (1978), where the defendant (Ford Motor Company) provides warranties to the ultimate purchaser to repair the item purchased."

Id. at *14 (internal citations omitted). The plaintiffs in Naiser relied on this language in Skilcraft Sheetmetal, Inc. to argue that they should be allowed to maintain a KCPA cause of action since they alleged that the manufacturer made valid express warranties for the benefit of consumers. The Court agreed. See id. According to the Court in Naiser, since the plaintiffs had sufficiently alleged that the manufacturer made valid express warranties for Plaintiffs' benefit, the exception outlined in Skilcraft Sheetmetal, Inc. was applicable. The plaintiffs were permitted to maintain a KCPA claim despite the absence of a direct buyer-seller relationship. See id. The Court finds that a similar conclusion is warranted here. As such, Bayer's motion to dismiss is **DENIED** as to Plaintiffs' Twelfth Cause of Action.

## G. PLAINTIFFS' PUNITIVE DAMAGES CLAIM (THIRTEENTH CAUSE OF ACTION)

Bayer next argues that Plaintiffs' cause of action for punitive damages must be dismissed because under Kentucky law, punitive damages are a remedy, not a cause of action. See Baird v. Bayer Healthcare Pharms., Inc., 2013 WL 5890253, at *4 (E.D. Ky. Oct. 31, 3013) (dismissing a cause of action for punitive damages because "this 'claim' is actually a prayer for relief, not a separate cause of action"); Dalton v. Animas Corp., 913 F. Supp. 2d 370, 379-80 (W.D. Ky. 2012) (explaining that "a claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action"). In response, Plaintiffs voluntarily withdraw their Thirteenth Cause of Action to the extent it asserts a punitive damages claim. (See Pls.' Resp. [DN 37] 20.) Therefore, the Court holds that Bayer's motion is **DENIED** in this respect as moot. Plaintiffs' Thirteenth Cause of Action is **WITHDRAWN**.

## H. PLAINTIFFS' ALLEGATIONS REGARDING "FEDERAL REQUIREMENTS"

As a final matter, Bayer argues that Plaintiffs' section entitled "Federal Requirements" should be stricken because it contains several alleged violations of federal law, without indicating that Plaintiffs were harmed by any violation—and without indicating that they have standing to sue for any violation. (See Def.'s Mem. [DN 36-1] 14-15.) For instance, Plaintiffs assert that Bayer "failed to comply with federal standards applicable to the sale of prescription drugs including but not limited to one or more of the following," and then list twenty-nine (29) alleged violations of federal law. (Am. Comp. [DN 34] ¶ 85.) According to Bayer, this section of Plaintiffs' Amended Complaint should be stricken since it is so vague that a different drug could conceivably be substituted in place of Mirena® without making any other changes to the section. Bayer urges the court to strike the section pursuant to Fed. R. Civ. P. 12(f), which states that the court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."

Plaintiffs respond that these allegations should not be stricken. According to Plaintiffs, the allegations "detail Defendant's failures, and therefore indicate breaches of duties, lack of safety, defectiveness and unreasonable danger, among other things. Thus, they support many of the causes of action in the Amended Complaint." (Pls.' Resp. [DN 37] 23.) Plaintiffs note that they "find it curious that Defendant on the one hand complains that the Amended Complaint lacks specificity, but on the other contains too much." (Id.)

The Court agrees with Plaintiffs that the "Federal Requirements" section of the Amended Complaint should not be stricken. Fed. R. Civ. P. 12(f) provides that the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Sixth Circuit has held that "the action of striking a pleading should be sparingly used by the courts" because it is "a drastic remedy to be resorted to only when required for the purposes of justice" and only when "the pleading to be stricken has no possible relation to the controversy." Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953); see Wrench LLC v. Taco Bell Corp., 36 F. Supp. 2d 787, 789 (W.D. Mich. 1998) (noting that courts disfavor motions to strike since they "propose[] a drastic remedy"). As a general rule, immaterial allegations are those that "have no bearing on the subject matter of the litigation." New Day Farms, LLC v. Bd. of Trustees of York Twp., Ohio, 2009 WL 1652126, at *3 (S.D. Ohio June 10, 2009) (citation omitted). Impertinent allegations "have been defined as statements that do not pertain or are not necessary to the issues in question." Id. (citation omitted). Finally, a scandalous allegation "generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." Id. (internal quotations and citations omitted).

In this case, Bayer does not argue that the allegations are immaterial, impertinent, or scandalous. Further, Bayer does not appear to argue that the allegations are redundant. Instead, Bayer argues that the allegations must be stricken because they are vague. As a rule, motions to strike are "typically denied unless the allegations at issue do not relate to the subject matter of the action and may cause 'significant prejudice' to one or more of the parties." Id. Here, the allegations relate to the subject matter of the action and will not cause "significant prejudice" to Bayer if they remain. Therefore, the Court holds that Bayer's motion to strike is **DENIED**.

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Bayer's Motion to Dismiss the Plaintiffs' Amended Complaint for Failure to State a Claim and Motion to Strike [DN 36] is **GRANTED** in part and **DENIED** in part. Remaining in this action are: (1) Plaintiffs' negligence claim (First Cause of Action) as to Ms. Rice—but only to the extent it is based on the researching, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control or distribution of Mirena®; (2) Plaintiffs' failure to warn claim (Fourth Cause of Action) as to Ms. Rice; (3) Plaintiffs' fraudulent misrepresentation claim (Ninth Cause of Action), fraudulent concealment claim (Tenth Cause of Action), and fraud and deceit claim (Eleventh Cause of Action) as to Ms. Vanden Bosch and Ms. Rice; (4) Plaintiffs' breach of express warranty claim (Seventh Cause of Action); and (5) Plaintiffs' consumer protection claim (Twelfth Cause of Action). All other causes of action are **DISMISSED**.

*Joseph H. McGinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

April 7, 2014

cc: counsel of record